```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

**UNITED STATES OF AMERICA,**

                Plaintiff,

           v.                    Case No. 09 CR 830-4

**ILYAS KASHMIRI, *et al.*,**        Hon. Harry D. Leinenweber
**(TAHAWWUR HUSSAIN RANA),**

                Defendants.

## MEMORANDUM OPINION AND ORDER

Defendant Tahawwur Hussain Rana ("Rana") was convicted of knowingly conspiring to provide material support to a terrorist conspiracy to maim and murder people in Denmark (Count 11), and of providing material support to the terrorist organization *Lashkar e Tayyiba* ("Lashkar")(Count 12). By special interrogatory, the jury found that no one died as a result of Rana's actions in Count 12. Rana was acquitted of conspiring to provide material support to the conspiracies to bomb public places and kill or maim people in relation to the 2008 terrorist attacks in Mumbai, India (Count 9).

Before the Court are Rana's Post-Trial Motions. All parties are familiar with the complex background in this case, and this Court will not recite it again here.

## I. MOTION FOR A NEW TRIAL

Federal Rule of Criminal Procedure 33 lets courts "vacate any judgment and grant a new trial if the interest of justice so requires." A defendant is entitled to a new trial if his substantial rights were jeopardized by trial errors, *United States v. Hester*, No. 08 CR 848, 2012 WL 1655950, at *5 (N.D. Ill. May 10, 2012), or the verdict is against the manifest weight of the evidence. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999).

### A. Joinder

Rana seeks a new trial, alleging that the Court erroneously denied his pretrial request to sever the Denmark allegations from the Mumbai allegations. Rule 14 governs relief from prejudicial joinder. FED. R. CRIM. P. 14. However, a defendant must renew his severance motion at the close of evidence to avoid waiving the objection. *Id.* at 517-18. Rana has not identified, nor has the Court found, such a renewal in the record. *See* TR. 1447-70; 1704-05. Accordingly, Rana waived this claim.

Even if he had not waived it, the Court would not revisit its ruling, as Rana has not shown "actual prejudice that deprived him of his right to a fair trial." *United States v. Rollins,* 301 F.3d 511, 518 (7th Cir. 2002). The prejudice (if any) to Rana from the joinder was minimal. He was acquitted of the Mumbai charge, and substantial portions of the Mumbai evidence would have been

admissible against him in a separate trial on the Denmark charges to show his knowledge and absence of mistake – particularly because he claimed to believe that Headley's time in Denmark had legitimate business purposes. FED. R. EVID. 404(b); *United States v. Nettles,* 476 F.3d 508, 516 (7th Cir. 2007). Rana's jury confusion claim likewise fails; the jury was instructed to consider each count separately, and much of the complex evidence involving different people and terrorist groups would have been offered at a separate trial on the Denmark counts.

Nor was Rana prejudiced in his desire to present conflicting defenses to the two sets of charges. In discussing Rule 8, the Seventh Circuit has acknowledged that the challenge of presenting separate defenses is relevant to whether joinder is appropriate. *United States v. Coleman,* 22 F.3d 126, 132 (7th Cir. 1994). Neither party has identified Seventh Circuit authority directly on point, but the Fourth and Tenth Circuits have rejected claims that a defendant has a right to hide from the jury his inconsistent defenses to related charges. *See United States v. Burrell*, 720 F.2d 1488, 1493 (10th Cir. 1983) (*citing United States v. Eades,* 615 F.2d 617, 624 (4th Cir.), *adopted in pertinent part,* 633 F.2d 1075, 1078 (4th Cir.1980) (en banc), *cert. denied,* 450 U.S. 1001 (1981)). In any event, Rana would have had to explain some Mumbai-related evidence in a separate trial, and so was not seriously prejudiced by the joinder.

Rana also sought severance because he wanted to testify as to the Mumbai charges, but not on the Denmark charges.  *Cf. Nettles*, 476 F.3d at 516-17.  However, as discussed below, Rana argues that his acquittal on Count 9 and the special interrogatory under Count 12 demonstrate that he was acquitted of any wrongdoing relating to Mumbai.  Accordingly, he was not prejudiced by failing to testify about Mumbai.  Therefore, even if Rana had not waived his prejudicial joinder claim, he would not be entitled to a new trial under Rule 33.

## B. FISA Unconstitutionality

Rana argues he is entitled to a new trial because admitting evidence obtained under the Foreign Intelligence Surveillance Act ("FISA" 50 U.S.C. § 1801 *et seq.*) violated the Fourth Amendment.  Before trial, Rana sought disclosure of the FISA intercept applications in materials in this case, and to suppress any FISA electronic surveillance evidence.  The Court denied those motions.  Now, he again argues that FISA is unconstitutional to the extent that it permits surveillance primarily intended to obtain criminal evidence, but without offering the protections required by the Supreme Court's electronic surveillance cases.  The Court is no more persuaded by Rana's position now than it was before trial. *See also United States v. Abu-Jihaad*, 630 F.3d 102, 120, 127 (2d Cir. 2010) (rejecting a Fourth Amendment challenge to FISA).

Among other things, FISA requires law enforcement to show probable cause to believe that a surveillance target is a foreign power or its agent, and that each place to be surveilled is being (or is about to be) used by such a power or agent. 50 U.S.C. § 1805. Applications must include a certification that a significant purpose of the surveillance is to obtain foreign intelligence information. *See* 50 U.S.C. § 1804(a)(6)(B). Additional procedures and protections apply if the target is a "United States person," which the parties agree that Rana is not; however, Rana has not pressed this distinction as a basis for his constitutional claim. *See, e.g.,* § 1805(a)(4).

As the Court noted in denying the original motions, the United States Foreign Intelligence Surveillance Court of Review ("FISCR") considered and rejected a claim that after its 2001 amendments, FISA violates the Fourth Amendment. Specifically, that court concluded that the statute satisfies the reasonableness standard outlined by the Supreme Court's electronic surveillance cases, and that even if FISA does not satisfy the Fourth Amendment's warrant requirement, it "certainly comes close." *In re Sealed Case*, 310 F.3d 717, 746 (FISA Ct. Rev. 2002).

Since then, the Seventh Circuit has used the *ex parte*, *in camera* review process outlined by the statute, but declined to address the constitutional question. *In re Grand Jury Proceedings*, 347 F.3d 197, 203-04 (7th Cir. 2003). However, in *United States v.*

*Ning Wen*, it concluded that, so long as an intercept is reasonable and proper under the statute, FISA evidence may be used in domestic prosecution "whether or not the agents expected to learn about the domestic offense." *Ning Wen*, 477 F.3d 896, 898-99 (7th Cir. 2007). *Ning Wen*, while not identical to this case, confirms the appropriateness of FISA's significant purpose test, which this Court applied in its original ruling to find that the FISA applications at issue satisfied the statute. Rana's insistence that the sole purpose of this intercept was to gather evidence for a criminal prosecution does not change the Court's view of the record. *Cf. In re Sealed Case*, 310 F.3d at 735 (noting that if the government's sole objective is to gain proof of past criminal conduct, an intercept is improper). Rana's Motion is denied.

### C. Motion to Suppress

Rana argues that the Court erred in declining to suppress evidence from the FBI's search of his home and business. He argues that the warrant for that search lacked probable cause because, while it included some statements from Headley's interrogation, it omitted the statements which exculpated Rana. He argues that those statements outweigh any inculpatory evidence in the affidavit — even though that other evidence was the basis for very similar search warrants issued (but not executed) *before* Headley's arrest. (Rana's specific claims of prejudice, raised for the first time in his reply, are waived.)

Rana does not dispute that, in ruling on his initial motion, this Court properly considered a hypothetical affidavit which included the exculpatory statements. *Cf. United States v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008). Instead, he cites the evidence that the Court included in its (non-exhaustive) list of evidence supporting probable cause, and argues that it is insufficient to overcome Headley's statements exculpating Rana and the possibility of innocent explanations. Innocent explanations, however, while significant, will not necessarily negate a finding of probable cause. *See United States v. Funches,* 327 F.3d 582, 587 (7th Cir. 2003). The Court remains convinced that, even in light of Headley's claims (at the time) that Rana was not involved, the affidavit contained enough evidence "to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Robinson*, 546 F.3d 884, 889 (7th Cir. 2008). Rana is not entitled to a new trial on this basis.

### D. Motion to Quash Arrest and Suppress Post-Arrest Statement

Before trial, the Court denied Rana's Motion to Quash his Arrest (and Suppress his Subsequent Statement) for lack of probable cause. Rana was arrested without a warrant when police executed the search warrant for his home. Rana objects that when he was arrested, the Government only had significant evidence against Headley, and that the officers arresting Rana failed to factor Headley's insistence on Rana's innocence into the probable cause

analysis. That cherry-picking, he argues, invalidates the arrest and makes any evidence obtained as a result excludable. The Government objects that Rana fails to consider the evidence against him as outlined in the criminal complaint.

The Court has already ruled that probable cause to arrest existed for the same reason that probable cause to search existed — even considering Headley's statements exculpating Rana, the officers' information at the time, considered as a whole, would have led a reasonable person to "believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009). Rana has not convinced the Court to revisit its prior ruling, and he has not carried his burden under Rule 33.

### E. Other Objections

Finally, Rana incorporates the entire record by reference and argues without elaboration that the cumulative effect of every ruling against him entitles him to a new trial. By failing to identify, let alone develop, these errors, Rana has waived them for the purposes of this motion. *Cf. United States v. Cathey*, No. 09 CR 696, 2011 WL 6034485, at *3 (N.D. Ill. Nov. 30, 2011). Rana's Motion for a New Trial is therefore denied.

### II. MOTION FOR ACQUITTAL

Rana moves for a Judgment of Acquittal under Rule 29(c). His challenge to the sufficiency of the evidence is an uphill battle.

The Court does not weigh the evidence or assess credibility, but examines the record in the light most favorable to the Government and upholds the verdict if the jury rationally could have found that the elements of the crime were proved beyond a reasonable doubt. *See United States v. Howard*, 619 F.3d 723, 726-27 (7th Cir. 2010).

Rana objects that the Government failed to prove beyond a reasonable doubt that he knew the true nature of Headley's activities or knowingly supported Lashkar. Specifically, Rana objects that: (1) nearly all of the Government's evidence was from or interpreted by David Headley, and because the jury found Headley not credible, the evidence was insufficient to convict Rana; (2) the Government failed to prove any form of material support alleged in the bills of particulars; and (3) the exculpatory evidence offered by the defense precluded a guilty verdict.

The jury was presented with two very different pictures of Rana: the man who knowingly supported his lifelong friend as Headley traveled the world plotting and preparing for terrorist attacks, and the ambitious businessman manipulated by a friend into unwittingly providing cover for terrorist plots. Each side presented evidence to support its account and identified apparent inconsistencies or gaps in the other party's argument. Ultimately, the Court cannot conclude that no rational jury would accept the

Government's version of events and find Rana guilty, and therefore affirms the verdicts.

### A. Count 11

Under Count 11, the Government had to prove that Rana conspired to provide material support or resources (or to conceal their nature, location, or source), knowing or intending that they would be used in preparing or carrying out a conspiracy to kill or maim people in a foreign country. *See* 18 U.S.C. § 2339A(a). "Material support or resources" includes, *inter alia*, personnel, property, services, expert advice or assistance, and false documentation or identification. 18 U.S.C. § 2339A(b)(1).

Expert advice or assistance, in turn, means help or advice derived from technical or specialized knowledge. 18 U.S.C. § 2339A(b)(2). "Personnel" means a person who prepares for or carries out the murder or maiming. *United States v. Awan*, 384 Fed.Appx. 9, 16-17 (2d Cir. 2010). (As discussed below, 18 U.S.C. § 2339B refines the definition of "personnel." There is uncertainty among the Circuits as to whether this limitation applies to § 2339A. *Cf., e.g., United States v. Stewart,* 590 F.3d 93, 118 n.21 (2d. Cir. 2009) (the limitation applies only to § 2339B); *Estate of Parsons v. Palestinian Authority*, 651 F.3d 118, 126 (D.C. Cir. 2011) (expressing uncertainty and reserving the question). The Court adopts the Second Circuit approach.)

In the two bills of particulars, the Government accused Rana of conspiring to provide: personnel (himself and Headley), money (Headley's living and travel expenses), tangible property (including memory cards for surveillance footage), and expert advice and assistance (by offering his immigration business and expertise as cover for Headley). Rana argues that the Government proved none of these.

To the extent that Rana intended to argue that there was a fatal variance between the second bill of particulars (which does not mention the business cards) and his conviction, and not merely to challenge the sufficiency of the evidence, he has failed to explain how the omission prejudiced, for example, his ability to prepare his defense. *See United States v. Hach*, 162 F.3d 937, 947-48 (7th Cir. 1998). The Court therefore considers his sufficiency challenge below.

Taken in the light most favorable to the Government, the evidence here allowed a rational jury to convict Rana on Count 11. David Headley undisputedly plotted to attack the *Jyllands Posten* newspaper in Denmark, to punish it for publishing cartoons of the Prophet Mohammed. Headley testified that he kept Rana apprised of his plans, and that Rana not only approved but assisted with his cover. *See* TR. 334-75, 1149-50, 1151. The Government presented evidence that a jury could find corroborated parts of that testimony – for example, the business cards that Rana had printed

in Headley's name (ostensibly to further his cover), e-mails from Headley to Rana that the jury could conclude were coded references to the Denmark surveillance, and Rana's responses to and acknowledgment of some of those messages. *See, e.g.,* GX ILC 2; GX 1-19-09C; GX 1-19-09 A; GX 1-20-09D; GX 1-20-09E; GX 1-23-09A DH/TR.

As to the importance of the business cards, the Government introduced a "to-do" list from Headley's meetings with his alleged Lashkar handler, which lists immigration work as a potential cover for the surveillance and noting a need for business cards. TR. 325-334; GX 12-07-08 DH. (Indeed, Headley testified that, though he was not certain in advance that he would need them, he used the cards to access the newspaper facilities. TR. 364-69, 839-42.) The jury could also have found that, when he received an e-mail from *Jyllands Posten* advertising personnel, Rana responded by impersonating Headley in order to further Headley's cover. *See* GX 1-29-09A TR/LBA.

Similarly, a reasonable jury could have found beyond a reasonable doubt that Rana understood what Headley was up to. For example, in addition to the evidence listed above, the jury could have reasonably:

- concluded that Headley and Rana's recorded conversation (TR. 635-36) showed Rana's awareness of Headley's true intentions and targets;

- rejected Rana's innocent explanations for creating several coded e-mail accounts (anonymous or otherwise);

- concluded that in September 2009, Rana asked Pasha (a one time Lashkar member, later allegedly associated with other terrorist groups) in code whether he was an informant. *See* GX TR 9-4-09;

- found that, even accepting Headley's testimony that Rana's lying to the Pakistani general consul to get Headley a visa served no conspiratorial purpose, *see* TR. 1005-08, those lies showed Rana's awareness that Headley needed to hide his original identity; and

- rejected Rana's claim that he truly believed that Headley traveled all the way to Denmark in substantial part to place an advertisement in a newspaper that he loathed. Furthermore, the jury reasonably could have been skeptical that Rana believed that Headley legitimately needed to obtain ad information by visiting two offices of the same newspaper, just to get the same information that he might have by either calling or e-mailing from the United States.

This evidence, together with Rana's post-arrest statements and the record as a whole, could allow the jury to rationally conclude that Rana was aware of Headley's true intentions and helped him anyway. Accordingly, a rational jury could have concluded that Rana knowingly conspired to (and did) provide material support to the Denmark plot by furnishing Headley with business cards and supporting his business cover, and by providing Headley with logistical support for his travels and plots.

Rana's argument to the contrary hinges on a faulty assumption. He notes that Headley testified that Rana was involved in the

- 13 -

Mumbai plot.  Therefore, he argues, by acquitting Rana of Count 9 and under Count 12's special interrogatory *(see infra*, at P. 16-17) despite that testimony, the jury rejected *all* of Headley's testimony as not credible.  That sort of speculation, however, is impermissible.  *United States v. Nobles*, 69 F.3d 172, 188-89 (7th Cir. 1995) (citing *United States v. Powell*, 469 U.S. 57, 66 (1984)).  The Court will not reverse the jury's choice to credit important testimony despite knowing the many faults of the individual providing it.  *See United States v. Moore,* 425 F.3d 1061, 1073 (7th Cir. 2005).

Rana's argument that Headley's dishonesty infected too much of the remaining evidence must likewise be rejected.  The jury was free to accept or reject Headley's interpretations of the evidence, including his interpretations of allegedly coded messages and his suggested changes to the translation of certain evidence, in light of all of the evidence before it.

Finally, though Rana rehashes the exculpatory evidence and explanations that he offered at trial, the Court cannot agree that they so eviscerated the Government's case as to preclude a finding of guilt.  As noted, the jury was offered two disparate pictures of Rana, and counsel for both sides capably tested and criticized each other's cases.  Taking the evidence in the light most favorable to the Government, as the Court must, a rational jury nonetheless could have convicted Rana of Count 11.

## B. Count 12

Under Count 12, the Government had to prove that Rana knowingly provided (or attempted or conspired to provide) material support or resources to a foreign terrorist organization. 18 U.S.C. § 2339B. The Government had to prove that Rana knew that Lashkar was a designated terrorist organization, or that it engaged in terrorist activity. *Id.* The bills of particulars accused Rana of giving Lashkar personnel, currency, tangible property, expert advice and assistance, and false documentation and identification. Under § 2339B, "personnel" must organize, supervise or direct the terrorist organization, or work under its direction or control; they cannot simply work independently to further the organization's goals. 18 U.S.C. § 2339B(h).

As noted above, the jury convicted Rana on Count 11, relating to the Denmark plot, and acquitted him on Count 9, relating to the Mumbai plot. Count 12 alleged that Rana provided material assistance to Lashkar between late 2005 and October 3, 2009 — a time period encompassing both the Mumbai and Denmark plots. *See also* TR. 1694 (jury instruction). Both bills of particulars incorporated by reference the alleged material assistance under Counts 9 and 11 into Count 12. Unlike the general provisions of Count 12, however, its special interrogatory specifically asked whether any deaths had resulted from Rana's actions relating to the Mumbai plot. *See* TR. 1698. Because the jury acquitted Rana on

Count 9 and with the special interrogatory finding under Count 12, Rana argues that it conclusively rejected the claim that he supported the Mumbai plot, and that his conviction under Count 12 must rely on the Denmark evidence alone.

Even assuming for the sake of argument that the jury's findings disposed of any allegations of material support for Lashkar relating to plots in India, his conviction under Count 12 must stand. A rational jury could have found that he supported Lashkar by assisting Headley in the Denmark plot during the time that Lashkar was behind it.

First off, there seems to be little dispute that Rana knew that Lashkar was a designated terrorist organization and/or engaged in terrorism. If it accepted Headley's testimony, the jury could also have found that Lashkar backed the Denmark plot from late 2008 through February 2009, and that Rana knew of Lashkar's involvement. TR. 353-54, 362-68, 398-99. If the jury so found, then the evidence described above relating to Count 11 (which supports a finding that Rana knowingly provided business cards, cover, and logistical assistance to the Denmark plot in January 2009) would also prove that Rana provided material assistance to Lashkar.

From this evidence, as well as the record as a whole, the Court cannot conclude that a rational jury could not have convicted Rana of knowingly providing material support to Lashkar in that he (at least) provided business cards and his own direct assistance to

further Headley's cover during the time that Lashkar was behind the plot to attack the newspaper. That Headley pursued the plan with other terrorist groups after Lashkar backed off does nothing to undermine the fact that Rana materially supported the scheme *while* Lashkar sponsored it.

### III. CONCLUSION

For the reasons stated herein, Defendant Rana's Motions for New Trial [Dkt 305] and for Judgment of Acquittal [Dkt 307] are denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 6/7/2012